Good morning, and may it please the Court, Andrew Kennedy on behalf of Christopher Olsen. I intend to reserve four minutes for rebuttal. I'll keep my eye on the clock. In this case, Bryant Ward and Ricky Peterson lied at Chris Olsen's trial, and those lies led to a host of issues that interplayed with one another to render the conviction unjust and the decision upholding it unreasonable. There are one, or I believe two, issues before the Court right now. I know the Court requested additional briefing on the question of the Brady issue. I'm prepared to discuss — I was going to discuss that initially, but I know that the Court had noted that it was reserving judgment on a certificate of approval. I would proceed that way. Okay. Thank you, Your Honor. The government takes issue with our argument on the Brady issue because they say that synchronous — suspicious synchronicity cannot be enough to establish that there was a deal. However, people in the United States are convicted every single day on a standard of beyond a reasonable doubt based on circumstantial evidence. And so to say that you need to have some sort of written, established, clear evidence of an agreement I think is demanding too much of a Petitioner, particularly in a case like this where there doesn't appear to have been a written agreement. However, as the case law establishes, the written — the agreement does not need to be written. It doesn't need to be formal. If the parties — if the government, the State, and the witness came to an agreement that he was going to get a benefit for his testimony, and they ultimately delivered on it, then that should have been disclosed to the defense, and the defense should have had an opportunity to present that to the  Let me jump in because I'm going to anticipate what they're going to say, so I want to hear it from you first. Okay. I think they're going to say the question here is a standard of review, and the courts that were reviewing here found that there was no deal. Let's assume that's what they're going to say. I'm pretty confident that's what they're going to say. What is your response to that? Because you're right. In principle, you're absolutely right that if there was a deal, it needed to be disclosed, and this case really turns upside down if that's the case. But you've got to prove that there was one, and you've got to deal with the standard of review, so walk me through that. Well, Your Honor's right. I think that to some extent, it's obviously incredibly difficult to prove that there was a deal when it wasn't reduced to writing. However, there are enough indicia of a deal that I believe it overcomes the standard of review. The timing, I think, is particularly suspect. Mr. Ward received his deal four days, including a weekend. So it's really two days, maybe one and a half days after Mr. Olson was sentenced. This is someone who has been around the block many, many times. This is a prosecutor who has been around the block many, many times. And those parties would not go along with this just based on hoping that the other party does what they want them to do. I believe that is convincing evidence that there was a deal, and I believe that that renders the state court decision unreasonable. And what's the best case? If we're going to write an opinion in your favor, what's the case that we should be on that issue? What's the case that we should be saying, yep, he's right, Mr. Kennedy's right, that's the case? Because it's going to be a lot easier for us to go your way if there's a case saying to go that way. I mean, I believe that the Boyd case that the government cites establishes that because, you know, I think that the argument that the government makes is disproven by that very case, because in that case, the district court was not willing to come to this conclusion until it heard from the lawyer, from the witness, from the witness's lawyer. That was what tried to happen here. That was what the Washington Court of Appeals wanted to see happen. They remanded the case specifically because they thought that this was an issue. Then the case got to the hearing, and Mr. Ward invoked the Fifth Amendment. I don't think that it's assuming too much to state that Mr. Ward was not threatened with perjury if he convicted — if he testified in line with his testimony at trial. I admit that, as the Court below said, he had signed his declaration supposedly under penalty of perjury, but obviously, the State is the one with the He was not afraid that the defense counsel was going to get upset that he testified in line with his previous testimony and demand that he be charged with perjury. So I think that that's a pretty easy inference to come to, that — that there — that there was an agreement that he didn't comply with. Your Honor, as for a case, I believe that the — that the Horton case, from this case, also establishes that if there's a failure to disclose a lenient treatment, that that must be disclosed to the defense. And then also, the cases that I cited in my brief, in my supplemental briefing, which are — excuse me — CVAC, when this Court said that there was — that it upheld an abraded violation even though there was no evidence of an express meeting of the minds — of an explicit meeting of the minds, I'm sorry. And again, I think that that's the main point, that here, there likely is not an agreement that was reduced to writing. However, again, as I've stated, the — the circumstantial facts are so clear that it's not clear, I think, that there was clearly an agreement between them that — that that overcomes the standard. So — so let's assume that there was the agreement, and then — just for sake of argument right now — and then we have this testimony, like this recanted testimony. How do you fit that in with the Herrera standard, which talks about recanted testimony and the — and the really difficult decisions that courts have to make and the high standard with doing something with that type of testimony? I recognize that it's a high standard, but I believe that this recantation is particularly credible. And I also think that it's significant that the Court of Appeals did want to have a hearing. There was an option to really flush this out. The State court and the State prosecutor had the option to call the prosecutor to demonstrate that this isn't what happened, to give Mr. Ward immunity, let him testify as he saw fit, and then establish that his recantation was unreliable. Again, unfortunately, that just didn't happen here. Just moving on quickly to the other issue on which the district court granted the certificate of appealability, I know that there's been some debate about which of the standards necessarily applies, if it's the Jackson standard, the Schlepp standard, or the Winship standard. I believe that under any of those standards, Mr. Olson is entitled to relief. I think, obviously, the Jackson standard deals with the evidence that was available at trial. There was enough to make an inference that Ward had a deal, but I think that had the deal been explicitly made known, that it would have been much clearer. I think under the Winship standard, Mr. Olson is an innocent person, is legally innocent of this crime, and cannot be stand convicted of it. And under the Schlepp standard, I know that several of our others did not get a certificate of appealability, but, again, I still think that this whole issue, it's not just isolated to the Brady part of it. It's not just isolated to insufficient evidence part of it. It's the whole system where everybody had an obligation to get to the bottom of what was going on with Bryant Ward, why he was testifying this way, why he was testifying in line with this deal, and everyone dropped the ball on it. And so because of that, I believe that the evidence was insufficient to convict Mr. Olson, and to now he is an actually innocent person who stands convicted. For that reason, I believe that the decision of the district court should be reversed, remanded, ideally remanded with instructions to grant the writ, but I also think that there would be an option to remand it with instructions to have an evidentiary hearing and were flat-out denied. I think that this would be an example where the Federal court could take a page from the Washington State court and have the hearing that the State court didn't have, and give us the opportunity to fully develop that evidence, to call the prosecutor, to call the witness, and actually establish what the facts are instead of rely on declarations from the prosecutor and what seems clear from the circumstances. Unless the court has any more questions, I'll reserve the remainder of my time for rebuttal. Very well. Good morning, Your Honors. My name is Jorge Sontag, here to represent the State of Washington. May it please the court. Just to pick up with the Brady Claim, I believe the court had a number of questions on. Let's start with the suspicious synchronicity. It all boils down to not whether the agreement was reduced to writing, but whether there was an agreement. And the Washington Supreme Court, as Your Honor pointed out, concluded that there was no agreement of any kind, written, oral, some type of understanding that would qualify as Brady material. And so Mr. Olson simply has not shown that that determination was unreasonable given the State court record. But they did that without an evidentiary hearing, right? They did that without an evidentiary hearing because initially it was remanded for an evidentiary hearing. Very important to keep in mind, not because of the Jackson or Brady, but because of the issue whether he should be given a new trial. So under state law and not under any constitutional claims, as we pointed out, the State Court of Appeals rejected the Jackson claim unanimously because they obviously understood that the evidence is limited to the evidence that was presented to the jury. And so for that reason, Jackson really falls, fails as a matter of law. But the trouble there, if we bring in the Brady issue, is the hearing was based upon whether the trial evidence supported it, but had the other testimony come in and that he had potentially had a deal and had been cross-examined, et cetera, that might have been a different outcome, right? That would be under Brady, potentially. But there we have to ask about materiality where we have to look at the whole record, not just at his recantation. And we've shown in our brief that there's plenty of contradictions between his recantation, not only to his own trial testimony, which Jones v. Taylor points out we have to consider when we assess the credibility, but obviously also contradicted by plenty of other evidence, including testimony by Mr. Olson's former girlfriend, Ms. Clark, that when he called her from the jail in Idaho that he didn't say, oh my gosh, I got into this situation. It's some type of admission, right? No, he said, I did this to defend you. And the you was not me. So otherwise, Mr. Olson, he said he did that to defend Ms. Clark. There's plenty of other evidence. And the plea agreement itself denies any agreement, right? Yes. I mean, the court, the state sentencing court in Mr. Brian Ward's case, sentencing him for the five robbery counts to a below standard range sentence, specifically made that finding that he testified without expecting anything in return. And these are state court findings that Mr. Olson simply speculates about that, oh, you know, there was some synchronicity. Let me address that specifically. Obviously, the prosecutor in Brian Ward's case knew that Mr. Olson was testifying for the prosecution in Mr. Olson's case. And obviously, the prosecutor there was an experienced person. How could have have gone the trial testimony? Either Mr. Brian Ward testified in favor of the state or he didn't. And so there's a limited universe of facts to after Mr. Olson's sentencing. So it doesn't take. Did the prosecutor seek a lenient sentence based upon that at the sentencing hearing? No. And again, there is no evidence. And Mr. Olson complains, oh, you know, we should have had an evidentiary. He could have called the prosecutors at his evidentiary hearing in state court. He didn't do that. He waited somehow for the state to call them. But the state obviously has nothing to prove. Oh, but wasn't it limited? It didn't have the Brady issue at that hearing. It didn't have the Brady issue, but the state trial court conducting the hearing made all sorts of findings that eventually the state court of appeals kind of rejected because it said, hey, this is too much. We didn't ask you to do all this. So you could have arguably at least called the prosecutor or tried to call him, but he didn't do anything. So all we're left with is the unanimous declarations of the prosecutors. Even Bryant Ward himself said, I had no deal. And he said that after he submitted his recantation. And even in his recantation, as your honors are aware, he simply said that he was simply afraid that if I did not testify favorably, that I would not receive a favorable plea bargain. As this court's precedent clearly says, if you just have the subjective belief, the subjective hope, there's nothing for the state to disclose because the state obviously doesn't know what hopes you have. They might be based on their experience. They might know, okay, well, obviously he's not in court for the first time, so he might have some hopes one way or another. But that is not Brady material because that is a conclusion obviously that Olson's very experienced trial counsel could have drawn himself as well, since we're talking about speculation. But like I said, there was simply no evidence that any evidence existed of a plea deal. And even if there was, as we briefed, the state court reasonably concluded that the outcome simply would not have changed. The evidence of guilt was overwhelming. And keep in mind that Olson's story that he told to pitch his claim of self-defense to the jury was highly unbelievable. The victim was shot through the passenger side window, yet Mr. Olson claims that he was ahead of him, turned around, and shot over his shoulder, and yet the victim was killed with a headshot. And innocent bystanders, uninvolved bystanders indicated that Mr. Olson took aim and with a cold expression in his face simply shot the person. So there was nothing, oh, as trying to flee the scene, and I was just doing the parting shot, and guess what? You know, it just happened to hit the person. So again, the state court reasonably concluded that there simply was no plea agreement, and Mr. Olson does not go beyond any speculation to establish that there was. And even if there was, the evidence of his guilt was overwhelming. Brian Ward's trial testimony was corroborated by other testimony that was presented. And even if the state, even if trial counsel would have tried to impeach Brian Ward's testimony by some type of other plea agreement regarding the five robbery counts, the state could have easily countered with prior consistent testimony. And under Washington law, we cited the State v. McWilliams case. Even if the person that made the prior statement has some generalized motivation to lie, that evidence still will come in as evidence of a prior statement, in other words, to rebut claims of recent fabrication. Did they have the statement, I did this for you then at that time, to use as a prior consistent statement at the hearing time? I'm not sure when that was made. Oh, the prior statement was made two days after the shooting. So 15 months before the robbery crimes even occurred. And of course, again, Mr. Brian Ward, he might have had some hopes, some expectations by offering his services as a witness. But again, we're in speculation land, and that is simply not sufficient to overcome the state court determination that there was no plea agreement, and that even if there had been one, it would not have been material. Unless you have any other questions for me, I'd be happy to talk about the Jackson claim some more and distinguish it from Schlupp and Torreira. No, nothing here. Very good. Then we simply ask the court to affirm the district court and affirm the dismissal of Mr. Olson's habeas petition. Thank you very much. As I stated earlier, it's not just suspicious circumstances. It's incredibly indicative circumstantial evidence that there was a deal here. It's not just that it happened a couple days later, although that is significant. It was 21 months below the low end of the guidelines that Mr. Ward could have received, which is a substantial reduction in the state Washington. I'd like to respond to the government's claim that it wasn't or the state's claim that it wasn't material because there was overwhelming evidence of guilt. Again, that's simply not true. Yes, there was overwhelming evidence that Mr. Olson shot Robert Ward. However, there was not overwhelming evidence that he didn't do it in self-defense. Mr. Ward and Mr. Peterson were in Bryant Ward and Mr. Peterson were in the car with Robert Ward. And to say that their testimony was not the most important piece of evidence suggesting that Mr. Olson could not have seen the gun did not act in self-defense is incorrect. I mean, the fact is that Ward that Robert Ward was found with a weapon and the people who were in the car were in the best position to testify as to what he was doing with the weapon. I don't believe that Mr. Olson's statement to his girlfriend moves the needle at all in that regard because people say lots of things to their girlfriends. It doesn't really doesn't necessarily change the fact that what Bryant Ward and Ricky Peterson saw was the most significant part of it. That was what would corroborate or not corroborate Mr. Olson's testimony. I believe that his statement that he had no deal is, again, unreliable, that, yes, the robberies happened later. However, as I stated earlier, this is unfortunately a man that's been around the block a few times. And at the time that he was first before the Court, he had cases where he was looking to curry favor. When he was before the police, he had cases where he was looking to curry favor. And at the time of the trial, he also did. And I think that that's another significant thing to note, that it's suspicious that Bryant Ward happened to remain in Thurston County in order to be able to testify at Mr. Olson's trial if there was no sort of agreement that he was going to testify. And so for that reason, I don't believe that his prior consistent testimony is relevant either. It's relevant, but not dispositive. He clearly had a deal. It clearly should have been disclosed to the defense. If the defense had been able to establish that the key state witness had such an overwhelming incentive to lie, to get almost two years off of his sentence, that would have been very significant on the jury's verdict. And I believe that the petition should be, that the opinion of the District Court should be reversed in the case remanded with instructions to either grant the writ or hold an evidentiary hearing. Thank you. Unless you have any further questions. All right. Thank you to both of you for your briefing and argument. This matter is submitted. And especially Mr. Kennedy, I want to thank your office for stepping up to handle these cases. A lot of federal defenders' offices don't do these cases. I know they're more work, but it really matters when you guys step up. So thank you for doing that. All right. So this particular panel is adjourned. We'll be back tomorrow with Judge Gould at 10 a.m. Thank you.
judges: McKEOWN, OWENS, Kendall